McINTYRE vs. WILLIAMSON and wife, CLARKE, and CLARKE, an infant, by DAVIDSON his guardian.

It is a strong rule of equity that a general release shall be confined to what was under consideration at the time of giving it.

The general words in a release of "all claims and demands whatsoever" are to be restricted to the subject matter of the release. Thus, where P. M. executed a release to T. B. C., by which he acknowledged to have received from the said T. B. C. a conveyance of a lot of ground, described as Lot No. 184, valued at $200, *in full satisfaction and discharge of all claims and demands whatsoever*, and, in consideration thereof and of one dollar, released and discharged the said T. B. C. *of and from all claims and demands whatsoever:* IT WAS HELD, that the release was to be restricted to the claims and demands which P. M. had against T. B. C. for the said lot of ground, No. 184, or to some demand of $200 which the conveyance was intended to satisfy.

A bill of foreclosure was filed in this cause on the second day of February, 1827. The bond and mortgage upon which the bill was founded were executed by Thomas B. Clarke, deceased, the father of the defendants, Catharine H. Williamson, Isabella M. Clarke, and Bayard Clarke, on the fourteenth day of October, 1820, to secure the payment of $950, and interest, within one year from the date of the said bond. The mortgage comprised fourteen lots of land. After the filing of the original bill, the defendant Catharine intermarried with

Charles A. Williamson, and a supplemental bill was filed to bring him in as a defendant.

The defendants, Isabella M. Clarke and Bayard Clarke, by their guardian, pleaded a release as follows: " that heretofore and be- " fore the said complainant exhibited his said bill of complaint in " this honorable court, and after the alleged execution and deli- " very of the bond and mortgage mentioned and set forth in the " said bill, and alleged to have been executed and delivered by " Thomas B. Clarke therein named, to the said complainant, to " wit, on the twenty-seventh day of February, in the year of our " Lord one thousand eight hundred and twenty-one, the said " complainant executed under his hand and seal, and delivered " to the said Thomas B. Clarke, a release of all claims and de- " mands whatsoever: By which said release the said Peter McIn- " tyre acknowledged to have received from the said Thomas B. " Clarke, a conveyance for a certain lot of ground described in " the said release as the lot No. 184, valued at two hundred dol- " lars, in full satisfaction and discharge of all claims and demands " whatsoever, and in consideration thereof and of one dollar, he, " the said Peter McIntyre, did thereby release and discharge the " said Thomas B. Clarke of and from all claims and demands " whatsoever. In witness whereof the said Peter McIntyre did " thereunto set his hand and seal the day and year therein above " written. And these defendants further for plea say, that the " said release was so executed and delivered by the said com- " plainant in the presence of one Edward Eldredge, who sub- " scribed his name as a witness to the same, as by the said re- " lease in the possession of these defendants and ready to be pro- " duced and proved before this honorable court, will more fully " and at large appear; and to which, for greater certainty, these " defendants pray leave to refer. And these defendants do " therefore plead the said release in bar of the said complainant's " bill of complaint and supplemental bill; and humbly pray the " judgment of this court whether they shall be compelled to make " any further or other answer thereunto. And these defendants " pray to be hence dismissed, with their reasonable costs and " charges in this behalf sustained." (*Sworn to by the guardian.*)

M'INTYRE
*vs.*
WILLIAMSON.

Mr. *J. Duer*, in support of the plea. 1. A release of all claims and demands, discharges a bond, although the debt thereby secured is not payable at the date of the release. It is the most extensive and beneficial document that can be given: *Litt.* § 508; *Co. Litt.* 291 *(B.)*; *Ib.* 265 *(A.)* It comprehends all actions real, personal and mixed; all rights of entry; covenants real and personal, and whether before or after breach. It takes within it a present right of any description: although the same may have to take effect *in futuro*. Thus, where there is *debitum in presenti*, a release of all demands includes it, although payable *in futuro*: *Com. Dig. Tit. Release (E.)* In *Tynam* v. *Bridges*, 2 *Cro. Jac.* 300, Williams J. said, "where "there is an obligation for the payment of money at a day to "come, it is a debt and duty presently and may be discharged "by a release of all demands before the day of payment." I admit that restrictions are sometimes attached to a release, but then the terms appear on the face of it; and no such thing occurs in relation to the one before the court: it is a general release. There is nothing in the bill about it, and we did right in pleading it. If the opposite party intended to invalidate this document they ought to have mentioned it in a supplemental bill. I admit there is a distinction as to the effect of a release upon some species of future payments. I refer to rents and annuities, *Tynam* v. *Bridges, supra.* The reason for it is apparent: it is, because, until a certain time has elapsed, there is no consideration; in truth, no debt.

2. If the debt is discharged by the release, and I contend that it is, the mortgage which was given to secure it is necessarily extinguished.

Mr. *J. Anthon*, for the defendants. There are two grounds for setting aside this plea. 1. It does not meet the demand in the body of the bill. The money may still be due on the bond and mortgage, notwithstanding the release: for it is pleaded nakedly—and thereby, in point of fact, proves the amount we claim to be still due. If this were a case at common law, we should be allowed to show, by replication, that the release did not affect or apply to our mortgage debt. This is clear from

the case of *Payler* v. *Homersham*, 4 *M. & S.* 423. A court of equity will certainly be as liberal as a court of law, and not stop us from going into explanation, in order to prove that the bond and mortgage were not included in the release—in other words, that the plea did not cover the whole ground. 2. A release, in order to affect future demands, must state them. This principle will be upheld on the strength of Lord Redesdale's opinion in *Roche* v. *Morgell*, 2 *Sch. & L.* 727; where it is laid down, that a plea of a release ought to show, that it includes all dealings and transactions between the parties. There is also the case of *Carthage* v. *Manby*, 2 *Show*. 90.; which was founded upon an action of covenant for payment of money at a future day. The defendant pleaded a release made before that day " of all debts, dues, actions and causes of action, " bills, obligations, writings, &c." There was a demurrer to this; and judgment was given for the plaintiff. Even if it were possible that the defendants could have a chance upon their plea, still we should not be put out of court, but the plea would be ordered to stand for an answer: *Beames' Pl.* 324.

Mr. *J. Duer*, in reply. The case in *Shower* is against all the authorities I have quoted. A release goes against all demands, due or to become due. If a release is executed under seal, with or without consideration, it is valid.

THE VICE-CHANCELLOR. The first question made upon the plea of the release is, whether, being given before the debt secured by the bond and mortgage was due and payable, it is a discharge of the debt? It is said, that a release in general terms of all claims and demands whatsoever, does not discharge an obligation not then due or a covenant not then broken. A number of authorities have been cited, both for and against the position, showing nice distinctions: as in *Carthage* v. *Manby*, 2 *Show.* 90., *Tynam* v. *Bridges*, *Cro. Jac.* 300., *Co. Litt.* 265. (*A.*) *and* 291. (*B.*), and, (where a great variety of cases are referred to) *Com. Dig. Release, E. Pl.* 1.

But, whatever may be the force of authority or the better opinion upon this question, it is unnecessary for me to deter-

1831.

M'INTYRE
*vs.*
WILLIAMSON.

July 11.

mine it in the present case : because I think the release, as pleaded, can be disposed of upon much more rational and satis- factory grounds.   I consider the true question in this case to arise upon the construction and meaning of the release : whe- ther or not it was intended by the parties to discharge the debt secured by the bond and mortgage upon which the bill is filed ?

The complainant's ·counsel contends that it was not so in- tended; and that this is manifest from the face of the release itself.   I am, therefore, to consider whether enough appears to show that the release pleaded is foreign to this particular debt. It is well settled, that general words in a deed are qualified and restricted by the recital; and that, in construing the deed, courts are bound to limit it to the subject matter mentioned in the recital.   This rule was expressly recognised by the Supreme Court in construing a release given in evidence.   I refer to the case of *Jackson* v. *Stackhouse*, 1 *Cowen's R.* 122.   It is more emphatically the rule in equity.   Lord Hardwicke, in *Cole* v. *Gibson*, 1 *Ves. Sen.* 507, says, it is common, in equity, to restrict a general release to what was under consideration at the time of giving it; and in *Ramsden* v. *Hylton*, 2. *ib.* 310, he again remarks, " it is certain that if a release is given on a particular " consideration recited, notwithstanding the release concludes ʻ with general words, yet the law, in order to prevent surprise, " will construe it to relate to the particular matter recited, " which was in contemplation of the parties and intended to be " released."   The release, as pleaded in this cause, contains an acknowledgment that the complainant (the releasor) had re- ceived a conveyance of a lot of land (not one of the lots inclu- ded in the mortgage,) valued at $200, in full satisfaction and discharge of all claims and demands, and in consideration there- of and of one dollar he releases and discharges the said Thomas B. Clarke of and from all claims and demands whatsoever.   It will be recollected, that the debt in question was $950, secured by Clarke's bond and a mortgage upon fourteen lots of land. And it is, therefore, hardly to be conceived, how—in about four months after obtaining that security—the mortgagee, for the consideration of one lot conveyed to him in fee and valued

at only $200—should have intended to release a debt of nearly five times the amount, secured upon such a number of lots as are included in the mortgage. Instead of putting this construction upon the instrument, I think it is much more rational to conclude, some other debt or demand had occurred to the amount of about $200, which the conveyance of a single lot was made to satisfy ; and that the release was only intended to discharge such other debt or demand. Besides—it may be asked : why were not the bond and mortgage given up or cancelled, if the debt thereby secured was satisfied at the time of giving the release ? The parties mutually and formally executed and delivered, the one a deed of conveyance, and the other a release under seal : and yet they left the most important part of the business unfinished—if, indeed, the transaction had any relation to it, namely, the surrender of the bond and mortgage to be cancelled and, the acknowledgment of a certificate to take the mortgage off the records.

Under these circumstances, I have no difficulty in concluding, that the release was not intended to embrace this debt or demand; and that the general words " all claims and demands whatsoever," are to be restricted to the claims or demands which the complainant had against Thomas B. Clarke for the conveyance of the lot No. 184, mentioned in the release, or to some demand of $200, (besides the bond and mortgage) which that conveyance was intended to satisfy. In *Jackson* v. *Stackhouse*, before mentioned, Justice Woodworth cites, with approbation, a case from 2 *Rolles' Abr.* 409, where it was held, that if a release acknowledges the receipt of ten pounds, and acquits and discharges the person of whom it is received, and also of all actions, debts and demands, yet nothing is discharged by the release but the ten pounds : for the last words are limited by the first. This is a sound principle in the construction of releases, and it is abundantly supported by other authorities : 3 *Mod.* 277 ; 1 *Ld. Raym.* 235 ; 4 *Bos. & P.* 113 ; 4 *Maule & S.* 423 ; also, *Fish* v. *Jesson*, 2 *Vern.* 114.

I cannot, therefore, admit the plea of the defendants, setting up the release, to be an equitable bar to the complainant's bill. It must be overruled. The defendants are not entitled, in the

1831.
*July* 5.

shape in which it appears, to have the benefit of it saved to the hearing, nor to have it stand for an answer: *Mitf.* 245, *3d edit.* They must answer the bill fully; but in so doing, they are at liberty, if they think proper, to make the release a part of their answer, and to rely again upon it: *Ib.* 248.

In pursuance of the 49th Rule, the defendants have thirty days to answer the bill, on payment of the costs of the hearing upon the plea.